UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELVIN MAURICE WILLIAMS,

    Petitioner,

v.                                        Case No. 8:10-cv-1156-T-17EAJ

SECRETARY DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

This cause is before the Court on Petitioner Williams's timely-file 28 U.S.C. § 2254 petition for writ of habeas corpus. Williams challenges his judgment and sentence for stalking while under an injunction entered in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida on April 8, 2003. A review of the record demonstrates that the petition must be denied.

PROCEDURAL HISTORY

Petitioner was charged by information with aggravated stalking and stalking while under an injunction, tried by jury, acquitted on the aggravated stalking charge and convicted as charged on the charge of stalking while under an injunction, and sentenced to 12 years in prison.

On direct appeal, Petitioner raised the following issues: 1) Whether the trial court correctly instructed the jury on the definition of "maliciously" as used in Section 784.048-(4), Florida Statutes (2001); 2) whether the trial court correctly refused to instruct the jury

that a threat to do future harm is not a credible threat or that an injunction against a defendant has no legal effect unless and until it is served on the defendant; 3)whether the trial court properly swore the jury venire midway through voir dire upon discovering that it had not yet been done; and 4) whether the trial court properly admitted the recording of the 911 call.

Williams's conviction and sentence were affirmed without opinion on June 6, 2006, *Williams v. State*, 931 So. 2d 916 (Fla. 2006). On October 9, 2006, Williams filed in the Second District Court of Appeal a petition alleging ineffective assistance of appellate counsel in failing to argue that the trial court had erred in failing to instruct the jury on all elements of the aggravated stalking charge and that the trial judge was vindictive in sentencing Williams. The petition was denied on April 23, 2007. *Williams v. State*, 958 So. 2d 934 (Fla. 2007). Williams's motion for rehearing was denied on May 29, 2007.

On October 31, 2006, Williams filed a motion for postconviction relief claiming ineffective assistance of trial counsel in failing to do the following: 1) call certain witnesses at trial; 2) thoroughly investigate the case, properly prepare for trial, and file a motion to dismiss one of the charges; 3)use certain documents to impeach one of the State's witnesses; 4) object to admission at trial of the permanent injunction that had been issued but not served on Williams; 5) object to the State's notice of intent to seek enhancement of Williams's sentence; 6)move to dismiss the amended information as to count 2; 7) object to evidence of violations of injunctions that Williams had not been charged with; and 8) object to continuance of a retrial following a mistrial.

The trial court summarily denied relief on grounds 3, 4, 5, 8, and part of ground 1 but held an evidentiary hearing on grounds 2, 6, 7, and Williams's claim of ineffective assistance of trial counsel in failing to call Williams's original counsel, Dena Dymtrow; his mother; Donna Girard; and Darrell Ingram as witnesses (part of ground 1).

At the evidentiary hearing, held on November 29, 2007, Williams's postconviction counsel, Rick Terrana, informed the trial court that one of the witnesses Williams wanted him to call was now deceased but that there were two witnesses he wanted to call who were unavailable for this hearing and he therefore wanted to present them at a later date, one being Williams's original counsel, who had had to go to a memorial service for her mother, who had just died, and the other being Darrell Ingram, a bail bondsman who could attend the hearing because he had "to find a bail jumper" (Exh. D2 pp. 5- 6). The trial court stated that it would bifurcate the evidentiary hearing so that postconviction counsel could present these two witnesses (Exh. D2 p. 6).

On January 20, 2008, in the presence of the prosecutor, the trial court made the following statement on the record (Exh. D3):

> For the record, I had a meeting with Mr. Gould [prosecutor] and Mr. Terrana [Williams's postconviction counsel] and both sides have agreed that I should just issue my ruling based on the testimony that's already been taken. That's on the Williams case that was set for 1:30, so that hearing will not take place and you can order that Mr. Williams can be returned to State Prison.

Following the evidentiary hearing, the trial court denied relief on all of the remaining grounds. Copies of the motion for postconviction relief, the transcript of the evidentiary hearing, and the trial court's final order denying relief are found in Respondent's Exhibit D.

Williams's appeal claiming that the trial court had not afforded him a full and fair evidentiary hearing and challenging the trial court's rulings on all of the grounds raised in his motion for postconviction relief was affirmed without opinion on February 5, 2010. *Williams v. State*, 31 So. 3d 184 (Fla. 2d DCA 2010). The Second District Court's mandate issued on April 15, 2010. (Exhibit E).

Williams filed the instant petition for writ of habeas corpus on May 14, 2010, raising four grounds for relief.

## STANDARDS OF REVIEW

### The AEDPA Standard

Williams's petition is governed by the provisions of 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Under AEDPA, this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

### Discussion

### Ground One

Williams claims that his appellate counsel rendered ineffective assistance in failing to argue that the trial court erred in failing to instruct the jury on all elements of the aggravated stalking charge. Ground one has no merit.

During the charge conference, the following took place:

> MR. MITCHELL [defense counsel]: The next instruction we're requesting is that "An injunction has no legal effect unless and until it is served on [Williams]." Service is at issue in this case, Judge.
>
> MR. ALLEN [prosecutor]: Judge, that was the reason for the stipulation that we both agreed to.
>
> THE COURT: And -- and what's the -- let's go back up. Let's go back and look at the stipulation. What's the stipulation going to say?
>
> MR. ALLEN: Judge, if it's typed up as it was, that the State and defense "Do hereby agree that as to Count II of the information, the applicable dates for your consideration are from November the 5th, 2001 to November the 19th, 2001," which is when we both agree the injunction was in effect. Now, there is a factual dispute from his testimony as to whether or not two deputies

were mistaken about service, but there is certainly not an instruction that needs legal clarification to the jury. The jury will believe him or disbelieve him.

THE COURT: Mr. Mitchell.

MR. MITCHELL: The -- the stipulation reads, "The State and the Defendant do hereby stipulate and agree that as to Count II, the applicable dates are November 5, 2001 through November 19, 2001." Judge, at issue in this case is whether or not my client was served with the temporary injunction. His testimony is that he wasn't served. And there was testimony by at least two deputies that he was served, but the jury has to make -- has to understand that these injunctions don't have any legal effect by law unless they are served. That's basic due process.

THE COURT: Well, I think that's why there is an argument over whether or not he was served. And if this jury comes back with a question that deals with that, I'll be glad to answer it. But I think that it should be clear -- it should be clear from the stipulation. It should be clear, quite frankly, as well. And – and I don't think there is anything to prevent you from arguing the fact. The – that's a – that's a fair argument to present to the jury, that – and -- and the State isn't going to challenge that as the law, right?

MR. ALLEN: That's correct, Judge. We're not going to say that's not the law.

THE COURT: So you can argue that to this jury.

(Exh. A2 pp. 401-403)

In her initial closing argument, defense counsel argued in pertinent part:

Aggravated stalking, violation of an injunction, requires that there was an injunction in place. As stipulated, the State and the defense have agreed that if there was an injunction, that the injunction applied from November 5th until November 19.

My client took the stand, told you that he never received the injunction. In order for an injunction to be active, the recipient, the person who the injunction is against, must receive it. Ladies and gentlemen, you heard the facts. You heard the evidence. You decide for yourselves whether or not [Williams] had the injunction served on him and knew between those two dates, November the 5th and November the 19th, that there was an injunction in place.

- 6 -

> > (Exh. A2 pp. 413-414)

> > \* \* \*

> [Williams], as I indicated before, said he never received notice of the injunction. The officer testified that he did. There is a conflict.

> > (Exh. A2 pp. 416)

In his closing argument, the prosecutor argued in pertinent part:

> "I love you. I will destroy you. I've been watching you. I want you. I will kill you all, even if it means I go to jail." Those aren't my words. Those are the words of this man, Kelvin Williams, the Defendant; the same man who was served time and time and time again with the Circuit Court order forbidding him to have contact with Carlene Williams....

> > (Exh. A2 pp. 417)

> > \* \* \*

> Let's go back to November -- November 5th when Carlene Williams had the opportunity to get an injunction for protection against domestic violence. She got this injunction, Circuit Court judge signed it, gave a copy to her, shipped another copy to the sheriff's office to serve on the Defendant while Carlene Williams went home to change her locks.

> At the sheriff's office, they received this injunction. Corporal Wallace took the stand. Same corporal with 15 years of experience. The same corporal who told you, "I specifically remember serving that man." The same corporal who was very clear with Ms. Duncombe [defense counsel], "I served a copy of this injunction on that man November 6th, of 2001, and I dated it, and I put the time on it as well." That's an issue because service is what makes the whole thing enforced. The service of this injunction is what makes stalking aggravated, you see.

> > \* \* \*

> Now, it's not a piece of cake; however, it's very clear that in this case, aggravated stalking was done immediately the next -- that same day when the Defendant was served with this injunction.

> When [the daughter] and Carlene came home from having dinner with [the daughter]'s boyfriend, she felt a presence. [The daughter] felt a presence in the house. She went back into her mother's bedroom and out pops none

other than the Defendant. "I'm calling the police. Did you get -- did you get served the injunction?" "Yeah, I got served. I got served that." "Well, I'm definitely calling the police." "No, no. I didn't get served. I didn't get served."

Deputy Dykes is called, comes down the street. Deputy Dykes also took the stand. And I believe he said [sic] a seven-year sheriff's deputy with the Hillsborough County Sheriff's Office. He told you, "I wanted to straighten the situation out. I wanted to see what was going on. I took him back to the house. He was outside. She was inside. She had a copy of her injunction, which it's normal to have carbon copies connected to her copy of the injunction."

So he re-serves the Defendant this injunction. You don't have to believe Carlene Williams on that because she was inside. She said she gave him the copy. You don't have to believe [the daughter] because she didn't see it either. But I'll tell you what you should believe, Deputy Dykes because he told you specifically, "I served him this injunction again."

At that time he knows, "I am not supposed to go to this house. I am not supposed to have contact with this family, especially with -- particularly Carlene Williams. I am not supposed to call, I am not supposed to call."

He's arrested at that time after Deputy Dykes confirms with Deputy Wallace through his thorough investigation that she served him earlier. He serves him again. He's arrested, taken to jail. And what does he do? He calls. Carlene Williams told you he calls from jail. She hangs up. He calls back. Hangs up again. Calls back three times. Just in that period of phone calls, he has violated the injunction. You know what else? He repeatedly stalked her.

But we're not saying that's it. Look at the totality of the circumstances because he wasn't supposed to be there in that house on that day, especially when the doors were locked, when the locks were changed. Did he leave her alone after that? Yes, he did, for about a week. Comes right on back down to that street in Plant City, right on back over there, waits for the officer -- waits for the deputy. The deputy won't let him inside, so Carlene Williams packs his belongings – packs his belongings and gives them back to him.

\* \* \*

He takes his belongings. He leaves. The next day he comes back at 6:00 in the morning while this same domestic violence injunction is in place. He's already stalked her. He's already repeatedly followed her at this point. He pushes his arms through the window after breaking it at 6 o'clock, getting in a locked bedroom window, wanting a hug.

- 8 -

\* \* \*

The same man repeatedly violated this injunction and repeatedly stalked her.

(Exh. A2 pp. 419-425)

Is his testimony consistent with what Deputy Dykes said, which is -- they had him read from his report -- "I was there in the house but I didn't get served." Inconsistent because he has an interest in the outcome of this trial. Mr. Allen asked him, "Are you trying to develop with this jury some type of rapport? Are you trying to pull something over?" Well, when asked, "Were you there on the 14th?" "Nope. I was never there." "Were you there on the 15th?" "Nope. I was never there." Were you served with Corporal Wallace's first injunction?" "No. She said she forgot. She said she was going to come down and serve it on me, but she forgot."

First of all, that means he has notice of this injunction just because he says he knows there is an injunction. He knows he's not supposed to go back there. But he said he got it. He said he didn't get it, but Corporal Dykes or Deputy Dykes showed him a copy of Carlene's injunction. So again, he knows there is an injunction, but he wasn't served. He wasn't on notice. Members of the jury, use your common sense....

(Exh. A2 pp. 429-430)

\* \* \*

Let's look at the Defendant's statements. The Defendant stated, "I believe I served" -- or when Deputy Dykes called Corporal Wallace, that Corporal Wallace stated, "I believe I served him," but he says he didn't get served.

(Exh. A2 pp. 432)

In his final closing argument, defense counsel argued in pertinent part:

In the bottom left-hand corner of the temporary injunction, see here where it says, "Served," the little stamp? You don't see that on the final injunction, do you? It's not there. It wasn't served.

Now, let me ask, too, about service because the testimony from Corporal Williams -- or Wallace – whatever her name was -- was that she did go to make a photocopy. You recall her saying she went to make a photocopy? And that's what my client says. She went to make a photocopy. She never came back.

- 9 -

> Where is his signature that he received this? Do we expect less of a deputy serving legal papers than we expect of FedEx or UPS delivery people who deliver packages? That's a lack of proof. Without his signature there, that's a lack of proof. He never received it. Yeah, she told him about it. And she went to make a copy, and he was gone. She never served it, never gave him the paper. That is service.
>
> So this temporary injunction has no legal effect unless you believe he was served. And I submit to you, without his signature, there is a lack of evidence.
>
> Now, [the daughter] says, "Oh, I -- I saw him in the house and I asked him, 'You were served with those papers?' And -- and he says, 'Yes.'" Ladies and gentlemen, being served is a legal term. Do you think that young lady knows legal terms?
>
> Do you think she asked him, "Were you served with papers," or do you think that she's made that up now because now she knows that's an issue in the case, whether or not he was served. Maybe it's more likely she said, "Did you get a copy of the papers? Don't you know there is an injunction," or something like that. I don't believe she said he was served or asked him about serve -- that's a legal term. She doesn't have the sophistication to use those terms. She didn't. She lied on the stand. You can use that in judging her credibility.
>
> (Exh. A2 pp. 443-445)

The jury was instructed on the elements of the crimes charged as follows:

> Aggravated stalking involving the violation of an injunction is defined as follows: Before you can find the Defendant guilty of aggravated stalking involving the violation of an injunction, the State must prove the following two elements beyond a reasonable doubt: One, that [Williams] willfully, maliciously, and repeatedly followed or harassed Carlene Williams; two, that the Defendant did so in violation of an injunction for protection against domestic violence....
>
> \* \* \*
>
> Violation of an injunction for protection against domestic violence is defined as follows: Before you can find the Defendant guilty of violation of an injunction for protection against domestic violence, the State must prove the following beyond a reasonable doubt: One, that the Defendant willfully violated an injunction for protection against domestic violence by going to the

- 10 -

> Williams's residence, school, place of employment, or specified place frequented by the Williams and any main family or household member, or committing an act of violence against the Williams, or committing another violation of the injunction through an intentionally unlawful threat, word, or act to do violence to the Williams, or telephoning, contacting, or otherwise communicating with the Williams, directly or indirectly, unless the injunction allows indirect contact through a third party.

(Exh. A2 pp. 448-450)

After deliberations had begun, the jury asked, "Does the November 5th injunction need to be signed by the Defendant?" (Exh. A2 pp. 469). Defense counsel asked that the jury be given the answer "No, it does not have to be signed; but it does have to be served on the Defendant in order for the injunction to go into effect" (Exh. A2 pp. 479). The trial court agreed, "He does have to be served. It does have to be personally handed to the person, right?" and the prosecutor agreed (Exh. A2 pp. 479). The trial court then suggested the language "It must be given to the person," and defense counsel agreed (Exh. A2 pp. 480). What the trial court ultimately told the jury after rereading the question to them was: "The answer is no, it does not have to be signed; but it must be given to the person" (Exh. A2 pp. 482). 21.

Standard for Ineffective Assistance of Appellate Counsel

The Eleventh Circuit has set forth the applicable legal principles for reviewing a claim of ineffective assistance of appellate counsel:

> A defendant has a right to counsel to aid in the direct appeal of his or her criminal conviction. *See Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). This right to counsel is violated when appellate counsel is ineffective. *Id.; Alvord v. Wainwright*, 725 F.2d 1282 (11th Cir. 1984). This Circuit has applied the Supreme Court's test for ineffective assistance at trial, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to guide its analysis of ineffective assistance of appellate counsel claims. *See Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989). Therefore,

> [Petitioner] must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

*Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 112 S.Ct. 981 (1992).

With regard to the performance prong, the Eleventh Circuit has stated:

> *Strickland* held that in evaluating whether the appellate counsel's performance was deficient, counsel's performance must be evaluated for "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. Courts should presume effectiveness and should avoid second-guessing with the benefit of hindsight. *Id.* at 689, 104 S.Ct. at 2065. Specifically, *Strickland* encouraged reviewing courts to allow attorneys broad discretion to represent their clients by pursuing their own strategy. However, the Court realized that merely invoking the word "strategy" to explain errors was insufficient since "particular decision[s] must be directly assessed for reasonableness [in light of] all the circumstances." *Id.* at 691, 104 S.Ct. at 2066.
>
> The Supreme Court, on at least two occasions, has had an opportunity to explain the parameters of what constitutes a reasonable strategy for appellate advocates. In *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. The Court suggested that effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious. Id. at 751-52, 103 S.Ct. at 3313. The Court in *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), held that an appellate advocate who reviewed the entire record, thought about various claims, and then chose to pursue thirteen claims on appeal had furnished effective appellate assistance. The Court recognized that even though a non-appealed issue might have been successful, the appellate advocacy had to be judged in its entirety.

*Heath*, 941 F.2d at 1130-31.

Further, the Court has set forth the analysis for the prejudice prong of the two-part

test:

- 12 -

> A petitioner has satisfied the prejudice prong of *Strickland* when he or she can show that the appellate counsel's performance was sufficiently deficient to deprive the defendant of "a trial [or an appeal] whose result [was] reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  In the context of an ineffective assistance on appeal claim, this Court in *Cross v. United States*, 893 F.2d 1287 (11th Cir. 1990), held that in order to determine prejudice the court must first perform "a review of the merits of the [omitted or poorly presented] claim." *Id.* at 1290.  If the Court finds that the neglected claim would have a reasonable probability of success on appeal, then according to *Cross* it is necessary to find "appellate counsel's performance prejudicial because it affected the outcome of the appeal." *Id.*

*Id.* at 1132.

Knowledge of an injunction is one of the elements of aggravated stalking under Section 784.048(4), Florida Statutes (2001). *State v. Johnson*, 676 So. 2d 408 (Fla. 1996). However, the trial court *did* instruct the jury on the element of knowledge of the injunction on count 2 in the instant case, albeit belatedly. It is true that the trial court initially refused to give defense counsel's requested instruction that "An injunction has no legal effect unless and until it is served on [Williams]." However, this error was subsequently cured. First, the trial court allowed this element to be argued to the jury, and it *was* argued, quite extensively, in fact,  by the prosecutor as well as by defense counsel. The prosecutor expressly stated in his closing argument that service of the injunction was required (Exh. A2 pp. 419-420) and never argued to the contrary, but argued at length that Williams *had* been served, indeed, more than once, and had actual knowledge of the injunction. 27. Second, and more important, when the trial court denied the requested instruction in question, it stated that, if the jury were to ask a question concerning the issue of service of the injunction on Williams, the court would "be glad to answer it."

- 13 -

The jury did ask a question relating to this issue, asking whether the person who served the injunction had to obtain the defendant's signature on a copy thereof. And the trial court answered this question in accordance with defense counsel's wishes, stating, "The answer is no, it does not have to be signed; but it must be given to the person" (Exh. A2 pp. 482).

Because the trial court ultimately *did* instruct the jury on the knowledge element of stalking while under an injunction, Williams's premise is faulty: The trial court did not err in failing to instruct the jury on the knowledge element of stalking while under an injunction because it *did* instruct the jury on that element. Appellate counsel did not render ineffective assistance by failing to raise this issue because the issue is without merit, and raising it would not have garnered Williams any relief on direct appeal. An appellate attorney will not be held ineffective for failing to raise issues with little or no chance of success. *Chandler v. Dugger*, 634 So. 2d 1066 (Fla. 1994); *Engle v. Dugger*, 576 So. 2d 696 (Fla. 1991); *Swafford v. Dugger*, 569 So. 2d 1264 (Fla. 1990).

Ground One does not warrant habeas corpus relief.

### Ground Two

Williams claims that trial counsel was ineffective for failing to call Dena Dymtrow and Datrrell Ingram at trial. Williams raised this as ground one of his Rule 3.850 motion for postconviction relief. The trial court denied this claim in its order denying Rule 3.850 relief, stating:

> In ground one, Defendant alleges ineffective assistance of counsel for failure to interview, depose, and call witnesses. Specifically, Defendant alleges that he asked counsel to interview, depose, and call Dena Dymtrow...and Darrell Ingram, all of whom were available to testify.

>    As to Dena Dymtrow, Defendant alleges that she would have testified that the victims' deposition testimony was in direct conflict with their trial testimony. Specifically, Defendant contends that Dymtrow, his former attorney, had taken depositions of Carlene Williams and [the daughter], and that their testimony had been favorable, but that the depositions had been lost. Had counsel called Dymtrow, Defendant argues, there is a reasonable probability that the outcome would have been different. At the evidentiary hearing, counsel testified that Dymtrow did not have a sufficient recollection of what had been said at the original depositions [(Exh. D2 pp. 11-12)]. The Court finds counsel's testimony credible and finds that counsel's decision not to call Dymtrow as a witness was a strategic one, which this Court will not second guess on collateral attack. *See Johnson v. State*, 769 So. 2d 990, 100[1] (Fla. 2000) (finding that, where counsel makes an informed, tactical decision, the court will find that such a strategy is reasonable and does not constitute deficient performance). Accordingly, the Court finds that Defendant is not entitled to relief on this portion of ground one.
>
> \* \* \*
>
>    As to Darrell Ingram, Defendant alleges that he would have testified that, when he bonded Defendant out of jail on November 12, 2001, Defendant used Ingram's cell phone to call police to meet him at his home in Plant City so that he could get his property without violating the injunction. Defendant alleges further that Ingram would have testified that he took the Defendant to his mother's house in Winter Haven on November 18, 2001 and picked him up on November 20, 2001. Had counsel called Ingram, Defendant argues, there is a reasonable probability that the outcome would have been different. At the evidentiary hearing, counsel testified that her deposition of Ingram revealed that, because Ingram was unable to remember on which day he gave Defendant a ride, he would not have been able to provide an alibi [(Exh. D2 pp. 14, 28)]. The Court finds counsel's testimony credible and finds that counsel's decision not to call Ingram as a witness was a strategic one, which this Court will not second guess on collateral attack. *See Johnson v. State*, 769 So. 2d at 100[1]. Accordingly, the Court finds that Defendant is not entitled to relief on this portion of ground one.
>
> (Exh. D4 pp. 1-3)

Additionally, Williams's assertions that his trial counsel did not investigate these witnesses were controverted by trial counsel's testimony at the evidentiary hearing. Furthermore, the helpful testimony that Williams claimed Dena Dymtrow could give related solely to count 1, on which Williams was acquitted, so Williams cannot show prejudice

- 15 -

resulting from the failure to call this witness. And because, as Williams himself admitted, Ingram had no personal knowledge of Williams's whereabouts on November 19, 2001, even if Ingram could have corroborated Williams's claim that Ingram drove Williams to his mother's house on November 18 and picked him up there on November 20, Ingram would not have been a helpful alibi witness, and Williams cannot show prejudice resulting from the failure to call this witness.

Ground Two does not warrant habeas corpus relief.

### Ground Three

Williams claims that his trial counsel rendered ineffective assistance for failing to thoroughly investigate the case, properly prepare for trial, and file a motion to dismiss one of the charges. Williams raised this claim as grounds two and six in his Rule 3.850 motion for postconviction relief. The trial court denied the claim, stating:

> In ground two, Defendant alleges ineffective assistance of counsel for failure to investigate. Specifically, Defendant contends that counsel failed to prepare an effective defense for trial and failed to move to dismiss. Defendant argues that, had counsel argued the fact that Defendant was arrested only for the November 6, 2001, violation of the temporary injunction, the State would not have been able to prove the element of repeated acts necessary to convict for aggravated stalking. Had counsel moved to dismiss, Defendant argues, there is a reasonable probability that the outcome would have been different. At the evidentiary hearing, counsel testified that she heavily investigated Defendant's case, generating approximately twenty requests to her investigator [(Exh. D2 p. 29)]. Counsel testified further that the defense at trial, which ultimately led to a judgment of not guilty on count one, was aimed at demonstrating that Defendant was in no way violent or threatening to the victims, thereby eliminating the credible threat necessary for an aggravated stalking conviction. Counsel testified further that she successfully moved to dismiss six to eight counts of misdemeanor violations by arguing that they were lesser included offenses of the felony violations. Counsel explained that, as the State had witnesses to substantiate the felony violations, she saw no basis for which to move for dismissal on those charges [(Exh. D2 pp. 18-20, 28-31)]. The Court finds counsel's testimony credible and finds that it

> conclusively refutes Defendant's allegation. Accordingly, the Court finds that Defendant is not entitled to relief on this portion of ground two.
>
> * * *
>
> In ground six, Defendant alleges ineffective assistance of counsel for failure to move to dismiss the amended information as to count two. Specifically, Defendant contends that the State filed a second superceding Information, adding count two, Aggravated Stalking (injunction), based on the alleged violations that were previously nolle prossed. Defendant argues that counsel informed him that the superceding Information was "not allowed by law" and that she would file a motion to dismiss. Had counsel moved for dismissal of count two, Defendant argues, the outcome would have been different. At the evidentiary hearing, counsel testified that she does not remember telling Defendant that the amendments to the Information were illegal and that she did not see any basis on which to challenge the superceding Information [(Exh. D2 pp. 24, 31)]. The Court finds counsel's testimony credible and finds that, because the law does not require futile acts, counsel cannot be deemed deficient for failing to file a baseless motion. *See State v. Davis*, 932 So. 2d 1246, 124[9] (Fla. 3d DCA[]), *review denied*, 944 So. 2d 986 (Fla.] 2006). Accordingly, the Court finds that Defendant is not entitled to relief on ground six.

(Exh. D4 pp. 3-5)

The trial court's ruling was affirmed by the state district court of appeal. The state courts' rulings were not "contrary to" clearly established precedent of the Supreme Court of the United States nor did they involve an "unreasonable application" of such precedent. *See Williams v. Taylor*, 529 U.S. 362 (2000). Williams has not countered the state courts' findings with clear and convincing evidence.

Ground Three does not warrant habeas corpus relief.

## Ground Four

Williams claims that trial counsel was ineffective for failing to object to evidence of violations of injunctions with which Williams had not been charged. Williams raised this as

ground seven of his Rule 3.850 motion for postconviction relief.  The trial court correctly found that Williams was entitled to no relief on this claim for the reasons stated in its order:

> In ground seven, Defendant alleges ineffective assistance of counsel for failure to object to testimony regarding alleged injunction violations for which he was not charged or arrested. Specifically, Defendant contends that it was agreed upon that Defendant was not served with the permanent injunction and, therefore, he could not be in violation of such. Defendant argues further that, although he was not charged or arrested for violating the injunctions on November 13, 2001, November 14, 2001, November 15, 2001, and November 19, 2001, the State witnesses testified to violations on those dates. Had counsel objected, Defendant argues, there is a reasonable probability that the outcome would have been different. At the evidentiary hearing, counsel testified that, as the State was required to prove multiple violations, she saw no basis for an objection [(Exh. D2 pp. 31- 32)]. The Court finds counsel's testimony credible and finds that, because the law does not require futile acts, counsel cannot be deemed deficient for failing to raise a baseless objection. *See Davis*, 932 So. 2d at 124[9]. Accordingly, the Court finds that Defendant is not entitled to relief on ground seven.
>
> (Exh. D4 pp. 5-6)

The trial court's ruling was affirmed by the state district court of appeal. The state courts' rulings were not "contrary to" clearly established precedent of the Supreme Court of the United States nor did they involve an "unreasonable application" of such precedent. *See Williams v. Taylor*, 529 U.S. 362 (2000).  Williams has not countered the state courts' findings with clear and convincing evidence.

Ground Four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Williams's petition is denied.  The Clerk is directed to enter judgment against Williams and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 3, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Kelvin Maurice Williams